Gordon D. Arnold (0012195)
Attorney for Defendant Erie Insurance Company

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **TRACY AVERY, et al.** | \* | **CASE NO. 1:17-cv-0562** |
| **Plaintiffs** | | **Judge Susan J. Dlott** |
| **v.** | \* | |
| **ERIE INSURANCE COMPANY** | | **MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ERIE INSURANCE COMPANY** |
| **Defendant** | \* | |

Erie Insurance Company (hereinafter "Erie"), moves for summary judgment on all claims, including the breach of contract claim, good faith and fair dealing claim and the bad faith claim. Erie is entitled to judgment as a matter of law, because the Ohio Residential Code does not require replacement of Tracy and Kelly Avery's (hereinafter collectively referred to as "Avery plaintiffs") property, the claimed damage to the property is specifically excluded by the insurance contract, Erie properly adjusted the claim submitted by the Avery plaintiffs, and the Avery plaintiffs' insurance coverage claims are, at minimum, fairly debatable. The grounds for this motion are set forth in the attached memorandum, affidavits, and evidence cited therein.

Respectfully submitted,

/s/ Gordon D. Arnold
Gordon D. Arnold (0012195)
FREUND, FREEZE & ARNOLD
Fifth Third Center
1 South Main Street, Suite 1800
Dayton, OH 45402-2017
Phone: (937) 913-0103/Fax: (937) 913-425-0203
garnold@ffalaw.com
**Attorney for Defendant Erie Insurance Company**

<u>MEMORANDUM IN SUPPORT</u>

## I.    <u>UNDISPUTED MATERIAL FACTS</u>

The Avery plaintiffs' home is a two story, single family dwelling located in Hamilton, Ohio, built before 2013. (Joint Stipulation of Facts (hereinafter "Stip. Facts") ¶ 1, separately filed with the Court February 26, 2018 (Doc #<u>13</u>); *see also*, Affidavit of Erie Representative Geoff Saylor (hereinafter "Saylor Aff.") ¶ 4, attached as Exhibit A.) Erie and the Avery plaintiffs were parties to a homeowner's insurance contract, policy number Q59 5802648 C, policy period 11/08/15 through 11/08/16. (Stip. Facts ¶ 3; Saylor Aff. ¶ 2.)  The Avery plaintiffs submitted a claim for wind damage to their roof and fence due to a storm on August 27, 2016. (Stip. Facts ¶ 5; Saylor Aff. ¶ 3.)

Erie assigned property adjuster Geoff Saylor to the Avery plaintiffs' claim. (Saylor Aff. ¶ 3.) Mr. Saylor paid the claim during his first inspection, at his estimate of $2,696.50. (Id. at 5; Stip. Facts ¶ 7.) Mr. Saylor's estimate included approximately $1,000 for fence repairs, and another $1,000 to replace 10 cement-asbestos roofing tiles and 2 ridge caps. (Saylor Aff. ¶ 5; Stip. Facts ¶ 7.)

The original inspection by Mr. Saylor revealed only 5 damaged roof tiles, but Mr. Saylor included 10 roof tiles in his estimate, in case some additional tiles were damaged during the repairs. (Saylor Aff. ¶ 6; Stip. Facts ¶ 6.) Mr. Saylor checked with Premier Tri-State Roofing in Cincinnati, Ohio and determined it had the needed roof tiles in stock, confirming availability of the materials needed for repair. (Saylor Aff. ¶ 8.) The fence was damaged by rot, which is not a covered loss, but Mr. Saylor included some repair expense where the fence might have been

2

further damaged by wind. (Id. at 7; Stip. Facts ¶ 6.)

Several months after Mr. Saylor issued the settlement payment, Jason Monday of Tamlin Exteriors submitted an additional and much larger estimate to replace the entire roof and fence, for a total claim of $63,073.88. (Saylor Aff. ¶9; Stip. Facts ¶ 9.) Mr. Monday's estimate claimed several inapplicable codes required complete replacement. (Saylor Aff. ¶ 10; *see also*, Affidavit of Civil Engineer Len Rudick (hereinafter "Rudick Aff.") ¶ 7, attached as Exhibit B.) The Ohio Residential Code is the controlling law governing the Avery plaintiffs' property damage claim. (Stip. Fact ¶ 14.)

At the request of Erie, civil engineer Len Rudick inspected the property and analyzed Tamlin's estimate provided by Mr. Monday. (Rudick Aff. ¶ 3.) Len Rudick inspected the insured's home on April 26, 2017. (Rudick Aff. ¶ 4; Stip. Facts ¶ 12.) Len Rudick reported not finding any evidence of wind or hail damage to the tiles. (Rudick Aff. ¶ 5; Stip. Facts ¶ 12.) He found one cap tile and three slope tiles possibly broken or chipped by tree limb impact. (*Id*.) Mr. Rudick concluded the Ohio Residential Code allows the roof and fence damage to be repaired, and that neither the roof, nor the fence, would require complete replacement. (Rudick Aff. ¶ 6.)

## II.  LAW AND ARGUMENT

### A.  The Ohio Residential Code allows for minor repairs to the Avery plaintiffs' property and does not require replacement.

The Ohio Residential Code provides in section 101.2 that it applies to replacement and repair of family dwellings and appurtenant or accessory structures.

**101.2 Scope**. The provisions of the "Residential Code of Ohio for One-, Two-, and Three-Family Dwellings" shall apply to the construction, alteration,

3

movement, enlargement, replacement, repair, equipment, use and occupancy, location, maintenance, removal, and demolition of every one-, two-, or three family dwelling, any appurtenances connected or attached to such buildings or structures, or any accessory structures. . ."

Dwelling is defined by the Code as, "Any building that exclusively contains one, two, or three dwelling units, each of which may be occupied by a family . . ." Res. C. 202.

The Residential Code makes a distinction between new construction and work performed on existing structures. The Residential Code provides that structures existing when the Residential Code was adopted may continue without change, and a repair is not required to meet the provisions of the Residential Code regarding new construction if the repairs conform to the original construction approval, are safe, and approved by a local building director.

**APPLICATION**

\* \* \*

**102.7 Existing structures**. The **provisions of section 113 shall control** the alteration, repair, addition, maintenance, and change of occupancy of any existing structure.

**The occupancy of any structure currently existing on the date of adoption of this code** shall be permitted to continue without change provided there are no orders of the residential building official pending, no evidence of fraud, or no serious safety or sanitation hazard. When requested, such approvals shall be in the form of a "Certificate of Occupancy for an Existing Building" in accordance with section 111. Buildings constructed in accordance with plans which have been approved prior to the effective date of this code are existing buildings.

**EXISTING BUILDINGS AND STRUCTURES**

\* \* \*

**113.6** Replacement and repairs to systems, components and materials.

**Replacement of residential building components**, and repairs to existing systems and materials or building components not otherwise provided for in this section, **shall not be required to meet the provisions for new construction, provided such work is done in accordance with the conditions of the existing**

4

**approval** in the same manner and arrangement as was in the existing system, is not less safe than when originally installed and **is approved.**

**DEFINITIONS**

> \* \* \*

**202. REPAIR**. The reconstruction or renewal of any part of an existing building for the purpose of its maintenance.

The Residential Code provides specific regulations for "Minor Repairs," defined as reconstruction or renewal for maintenance, and not affecting public health or general safety, which repairs are allowed without application or notice to the building department.

**DEFINITIONS**

\* \* \*

**202.** REPAIR, MINOR. The reconstruction or renewal of any part of an existing building for the purpose of its maintenance when the work has limited impact on access, safety or health. . .

**APPLICABILITY AND JURISDICTIONAL AUTHORITY**

\* \* \*

**102.10.2 Minor repairs**. **Minor repairs to structures may be made to residential structures without application or notice to the residential building official**. . ." **Such repairs shall not include** the cutting away of any wall, partition or portion thereof, the removal or cutting of any structural beam or load bearing support, or the removal or change of any required means of egress, or rearrangement of parts of a structure affecting the egress requirements; nor shall ordinary repairs include addition to, alteration of, replacement or relocation of any standpipe, water supply, sewer, drainage, drain leader, gas, soil, waste, vent or similar piping, electric wiring or mechanical or **other work affecting public health or general safety."**

Under the Ohio Residential Code, minor repairs to an existing structure are not required to meet the Code's regulations for new construction, may be completed without an application and

plan, and do not require notice to or approval of a local building official. The only restriction placed by the Residential Code on minor repairs to existing structures, is that repair must not include work that affects the public health or general safety.

The Ohio Residential Code was adopted in 2013. The Avery plaintiffs' home was constructed before 2013 and is an "existing structure" under the Code. The repairs approved by Mr. Saylor's inspection are "minor repairs" consisting of installing 10 roof shingles and 2 ridge caps, and some minor fence repairs.

Mr. Rudick's inspection similarly identified minimal damage to the Avery plaintiffs' property. Mr. Monday's estimate does not dispute the limited damage sustained to the Avery plaintiffs' property and is consistent with the findings of Mr. Saylor and Mr. Ruddick. Further, replacement of the roof or fence was not necessary to protect public health; therefore, the work could be completed without compliance with regulations for new construction, and without an application to Hamilton's residential building official.

The insurance contract does not entitle the insureds to replacement of deteriorating and aging property simply because the aging property suffers minimal damage. The controlling law, and the facts and opinions of Erie representatives and retained experts, support the conclusion that Erie properly investigated, adjusted and issued payment for the repair of minimal damage to the Avery plaintiffs' property

B. **The Erie policy excludes coverage for the Avery plaintiffs' claimed property damage.**

6

The insurance contract between Erie and Mr. Avery contains the following exclusions of coverage for deterioration, wear and tear, inadequate maintenance, fungi, inherent vice, latent defect, or rot, even if weather conditions also contributed to cause the loss.

> a loss "5. caused by: . . . b. mechanical breakdown, deterioration, wear and tear, marring, inherent vice, latent defect, tree roots, rust or smog; . . . e. bulging, cracking, expansion, settling or shrinking in ceilings, foundations, floors, patios, decks, pavements, roofs or walls;"

> a loss caused "20. by weather conditions if any peril excluded by this policy contributes to the loss in any way;"

> a loss "21. caused by, resulting from, contributed to or aggravated by faulty or inadequate: a. planning, zoning, development; b. design, development of specifications, workmanship; construction, c. materials used in construction; or d. maintenance of or related to property whether on or off the "residence premises" by any person, group, organization or governmental body;" and,

> a loss caused "24. by "fungi," wet or dry rot or bacteria, meaning the presence, growth, proliferation, spread or any activity of "fungi," wet or dry rot, or bacteria other than as provided under ADDITIONAL PAYMENTS, Fungi, Wet Or Dry Rot Or Bacteria Coverage."

The conditions found by Geoff Saylor, Jason Monday and Len Rudick are excluded from coverage, because the damage was caused by deterioration, wear and tear, inherent vice, latent defect, weather conditions if any peril excluded by insurance contract contributed to the loss in any way, faulty or inadequate design or construction, maintenance, wet rot or dry rot.

Jason Monday, Len Rudick and Geoff Saylor agree that the Avery plaintiffs' property sustained minimal damage and that much of the damage to the roof and fence was due to deterioration and rot.  Mr. Monday's estimate does not dispute the underlying findings of Mr. Saylor and Mr. Rudick.  Even though the minimal damage found is excluded from coverage because of it being due to deterioration and rot, Geoff Saylor issued payment for repairs to the

property which might have been damaged by wind or a fallen tree limb. Both because the claimed damage to the Avery plaintiffs' home is excluded from coverage pursuant to the insurance contract, and because the damage was modest even if covered, Erie's modest payment of the claim was correct.

### C. Bad Faith Standard

Erie's claim decision was correct, as established above. The correctness of Erie's decision was at minimum fairly debatable. Where a claim against an insurance contract is "fairly debatable," i.e., reasonable minds can come to more than one conclusion, the insurance company cannot be liable for bad faith as a matter of law:

> An insurer, however, is entitled to refuse a claim where the claim is "fairly debatable" and the insurer's refusal is based on a genuine dispute over either the facts giving rise to the claim or the status of the law at the time the claim was denied. *Tokles & Son, Inc. v. Midwestern Indemn. Co.,* (1992), 65 Ohio St. 3d 621, 630, 605 N.E.2d 936, rehearing denied (1993), 66 Ohio St. 3d 1417, 607 N.E. 2d 465. Here, plaintiff's legal entitlement to UIM coverage was at least "fairly debatable." Even when it is viewed in a light most favorable to the plaintiff, the evidence regarding the initial and continued viability of the sudden emergency defense was conflicting.

*Dorsey v. Campbell Hauling,* 2003 Ohio 3341 (10th App. Dist. 2003); see also *Motorist Mutual Insurance Co. v. Said,* 63 Ohio St. 3d 690, 590 N.E. 2d 1228 (1992) (Syllabus, ¶ 3), cited in and Syllabus ¶ 3 not modified by *Zoppo v. Homestead Ins. Co.,* 71 Ohio St. 3d 552, 664 N.E. 2d 397 (1994) (Syllabus, ¶ 1). Where a claim is fairly debatable, the insurer is entitled to debate it and there is no bad faith on its part in doing so. See *Dirks v. Farm Bureau Mutual Insurance Co.,* 465 N.W. 2d 857, 861 (Iowa 1991). The burden is on the plaintiff to establish the defendant insurer acted in bad faith; the insurer has no duty to

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

prove it acted in good faith. *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St. 3d 272, 276, 452 N.E. 2d 1315, 1320 (1932).


### III.    CONCLUSION

Erie properly adjusted the Avery plaintiffs' claim because the Ohio Residential Code is the controlling law for allowable repairs to damage, and it allows for merely repair of the minimal damage to the Avery plaintiffs' roof and fence. Nothing in the Ohio Residential Code requires replacement of Avery plaintiffs' property. Further, the claimed damage to the Avery plaintiffs' property was caused by deterioration, rot and aging, which causes of damage are specifically excluded from coverage in the insurance contract. Summary judgment should be entered for Erie on the Avery plaintiffs' Complaint and their claims for breach of contract, good faith and fair dealing and the bad faith claim.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Gordon D. Arnold
Gordon D. Arnold (0012195)
FREUND, FREEZE & ARNOLD
Fifth Third Center
1 South Main Street, Suite 1800
Dayton, OH  45402-2017
Phone: (937) 913-0103
Fax: (937) 913-425-0203
garnold@ffalaw.com
**Attorney for Defendant Erie Insurance Company**

</div>

### CERTIFICATE OF SERVICE

I certify that on February 26, 2018, I electronically filed this pleading with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered

attorneys of record, and I emailed this pleading to John H. Forg, III, 7019 Miami Ave.,Madeira, OH 45243, jhforg@roadrunner.com, **Attorney for Plaintiffs.**

/s/ Gordon D. Arnold
Gordon D. Arnold

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**