IN THE UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **TRACY & KELLY AVERY,** *et al.* | : | Case No. 1:17-cv-0562 |
| Plaintiffs, | : | Judge Susan J. Dlott |
| vs. | : | |
| **ERIE INSURANCE COMPANY** | : | |
| Defendant. | : | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

*NOW COME* plaintiffs Tracy & Kelly Avery (the "Averys") and Tamlin Exteriors, LLC ("Tamlin"), by and through counsel, and hereby move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move this Court for an Order granting a summary judgment in their favor and against defendant Erie Insurance Company ("Erie").  This motion is supported by the parties' Joint Stipulations, the Affidavits of Kelly Avery and Robert O'Brien, both filed herewith, and the case law cited herein.

### I. Statement of the Case

This matter arises from the denial of the Averys' claim, submitted pursuant to their homeowners' policy with Erie, for replacement of their roof, parts of which were damaged by natural causes.  On August 21, 2014, the Averys purchased the residence located at 929 Virginia Avenue, Hamilton, Ohio ("Avery Residence").  Thereafter, effective November 8, 2014, Erie issued Insurance Policy No. Q59 5802648 ("Insurance Policy") covering the Avery Residence.

On August 27, 2016, there was a severe storm in the Hamilton, Ohio, area and the Avery Residence, which apparently still had its original roofing, suffered damage to several

roof tiles. The Averys filed a claim with Erie, being Claim No. 074-10740447170, and, on November 22, 2016, Erie's claim adjuster, Geoffrey Saylor ("Saylor") approved the claim for $2,696.50 in damages to the Avery Residence's roof and fencing. Saylor, in his dealings with Kelly Avery alluded to "asbestos tiles" and attempted to steer her to a particular contractor, and she became leery of that settlement. Accordingly, she sought a second opinion from Tamlin.

On March 9, 2017, Tamlin inspected the Avery Residence and determined that roof tiles on the Avery's existing roof was indeed made of asbestos. Tamlin then sent a sample taken from a damaged roof tile to ITEL Laboratories, Inc., a material laboratory, which confirmed the presence of asbestos. Under the O.A.C. 4101:8-9-01, sec. 907.3, a roof covering may not be installed without first removing the existing covering where the existing covering consists of, *inter alia*, asbestos-cement tile. Further, under O.A.C. 3901-1-54(I)(1)(b), issued by the Ohio Department of Insurance, where a loss requires replacement of an item, the insurer must attempt to match the "quality, color or size" of the item suffering the loss. Since asbestos roof tiles are no longer manufactured; this means that the entire roof must be replaced. Consequently, Tamlin prepared an estimate for the removal of the existing, asbestos roof and the installation of a new, slate roof, as well as replacement fencing; the total estimate was for $62,698.96.

Subsequently, on March 29, 2017, and again on May 5, 2017, Saylor issued a letter denying the Averys' resubmitted claim on the grounds that the claim was excluded under provisions of the Avery's policy. The Averys could find no such exclusions in their policy. Then, on May 16, 2017, they received notice that Erie was cancelling the Insurance Policy on the grounds that the Averys had not repaired the damage to their existing roof themselves.

On August 25, 2017, the Averys and Tamlin initiated this action alleging three separate claims: (*i*) breach of contract, based upon Erie's failure to allow the Averys' claim submitted under the Insurance Policy [Count One]; (*ii*) breach of Erie's common law duty to act fairly and in good faith towards the Averys [Count Two]; and that Erie acting in bad faith, in that the basis for its denial of the Averys' claim was not predicated upon circumstances that furnished reasonable justification for that denial [Count Three]. (*See*

Complaint (doc. 1). at ¶¶17-29.) On June 1, 2015, defendants Maple Knoll and Bolin, and on October 18, 2017, defendant Erie filed its Answer denying each the Averys' claims in their entirety. (*See* Answers to Complaint (docs. 3 and 4).)

Subsequently, the parties agreed that since most of the relevant facts we rot at issue, and could be stipulated, and that the legal issues were narrow in scope, that filing motions for summary judgment before engaging in extensive discovery was appropriate. Plaintiffs therefore submit the following Motion for Summary Judgment.

## II. Statement of the Facts

The following facts in the evidentiary record are relevant to the issues raised in defendants' Motions for Summary Judgment:

1. The Averys are citizens of the State of Ohio residing at 929 Virginia Avenue, Hamilton, Ohio, in Butler County, Ohio, within the Southern District of Ohio. The Avery Residence is a two story, single family dwelling, built before 2013. (Joint Stipulation No. 1; Affidavit of Kelly Avery ("K.Avery Aff.") at ¶1.)

2. Erie is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania engaged in the business of providing insurance to individuals and businesses. Erie is duly-licensed to issue, inter alia, homeowner and property insurance policies within the State of Ohio. (Joint Stipulation No. 2.) Erie and the Averys were parties to a homeowner's insurance contract, policy number Q59 5802648 C, policy period November 8, 2014 through November 8, 2017. (Joint Stipulation No. 3; *see* Insurance Policy, Joint Exhibit "1").

3. The roof on the Avery Residence was constructed of 12x24 inch Philip Carey Careystone Scotch American No. 20 asbestos-cement tiles. (Affidavit of Rob O'Brien ("O'Brien Aff.") at ¶3.) While Philip Carey technically remains in existence, it has not manufactured any new product since 1989. (Joint Stipulation No. 4; *see* O'Brien Aff. at ¶8.)

4. On August 27, 2016, there was a severe storm in the Hamilton, Ohio, area and the Avery Residence suffered wind damage: tree branches fell on the roof and on the fence bordering the property. Several roofing tiles were torn away. (Joint Stipulation No.

5.) Kelly very also found a damaged roof tile in her yard, which she kept. (K.Avery Aff. at ¶4.)

5. Thereafter, the Averys filed a claim with Erie, being Claim No. 074-10740447170. (K.Avery Aff. at ¶5.) Subsequently, Geoff Saylor ("Saylor"), Erie's claim adjustor, inspected the Averys' residence. Saylor identified five roof tiles damaged from wing activity and/or falling branches. He further determined that portions of the fencing were rotting. (Joint Stipulation No. 6.)

6. Saylor asserts that he also contacted Premier Tri-State Roofing and confirmed the availability of roof tiles matching those found on the Averys' roof. (Affidavit of Geoffery Saylor ("Saylor Aff.") at ¶8.) Rob O'Brien ("O'Brien") of Shamrock Restoration, an expert retained by the Averys, and who previously had identified the roof tiles on the Avery Residence roof as Philip Carey Careystone Scotch American No. 20, also contacted Premier Tri-State Roofing. He spoke with the manager, who stated that he did not have any Philip Cary products in stock. (O'Brien Aff. at ¶3; see Advertising Materials, Plaintiffs' Exhibit "F".)

7. Subsequently, O'Brien, became aware that Saylor was asserting that a local firm, Premier Tri-State Roofing, had tiles matching those on the Averys' residence in stock. He contacted Premier Tri-State Roofing myself and inquired about Careystone asbestos-cement tiles. He received a call back from the manager, who explained that his firm did not carry asbestos-cement roof tiles. (O'Brien Aff. at ¶4.)

8. The manager recommended that O'Brien contact Reclaimed Roofs, Inc., out of Greenville, Delaware. O'Brien did so, and the manager there at first stated that he had roof tiles that matched O'Brien's description. However, when the manager emailed O'Brien a picture of the asbestos-cement tile he was referring to, O'Brien could see that it was flat, not tabbed like those on the Averys' roof. (O'Brien Aff. at ¶5.)

9. In fact, O'Brien's research had shown that Philip Carey Manufacturing Company, after several mergers, cease business operations in 1989 and in 2013 filed for protection under Chapter 11 of the U.S. Bankruptcy Code, so it was no surprise that such tiles were no longer available. (O'Brien Aff. at ¶8.)

10. O'Brien also found the manufacturer's specifications for installing Careystone Scotch American No. 20 roof tiles. Philip Carey, the manufacturer, recommended drilling holes through the roof tiles and that the fasteners need to be tightened down properly. This involved lifting the overlapping tile which would be impossible to do without damaging the old tile. (O'Brien Aff. at ¶4; *see* Philip Carey: Installation Manual at 58-60; Plaintiffs' Exhibit "G").

11. O'Brien additionally found references to installing asbestos-cement tiles using small, metal brackets attached to the lower edge. That method rises the bottom of the roof tile above the plane of the surrounding tiles, making it susceptible to wind damage. (O'Brien Aff. at ¶5.)

12. Nonetheless, on November 22, 2017, Saylor issued payment to the Averys in the amount of $2,696.50 (less the $500.00 deductible). This settlement included $1,308.00 for materials (wooden fencing, 10 roofing tiles, and 2 ridge caps; $681.91 for labor). (Joint Stipulation No. 7; Joint Exhibit "2") Thereupon, Erie issued Check No. NE29539 in the amount of $2,196.50 in settlement of that claim. (Joint Stipulation No. 8; *see also* Correspondence, dated November 22, 2017, Plaintiffs' Exhibit "B".)

13. Kelly Avery's dealings with Saylor, however, aroused her suspicion. Saylor, when he inspected the roof of the Property, reported that the roof tiles contained asbestos, but that even though asbestos dust was highly toxic when inhaled, the roof could be safely repaired. Later, after approving the replacement of the damaged roof tiles, he advised the Averys to hire a particular contractor because he had experience dealing with asbestos tiles. (K.Avery Aff. at ¶6.)

14. Subsequently, the Averys contacted Tamlin to obtain a second opinion. On March 9, 2017, Tracy Avery entered into a contract with Tamlin whereby he assigned the proceeds of the Averys' insurance claim to Tamlin; in return, Tamlin promised to use the proceeds from the settlement of that claim with Erie to replace the existing roof on the very Residence. (K.Avery Aff. at ¶7.).

15. That same day, Derek DeMolet (DeMolet") and Jason Monday ("Monday") of Tamlin inspected the Avery Residence, but did not actually climb up on the roof. They suspected that the roof tiles might be made of asbestos, and that the roof should be

replaced rather than repaired.  Kelly Avery gave them the roof tile that she had collected from my yard.  (K.Avery Aff. at ¶8.)  Mr. DeMolet sent that damaged roof tile to ITEL Laboratories, Inc., of Jacksonville, Florida, a material evaluation laboratory, who confirmed the presence of asbestos.  (Joint Stipulation No. 9.)

16.    Mr. Monday prepared an estimate for the removal of the existing roof and the installation of a new roof, as well as replacement fencing. The total estimate was for $62,698.96. Subsequently, the Averys resubmitted their claim to Erie, including Tamlin's estimate for replacing the existing roof. (Joint Stipulation No. 10; *see* Estimate, Joint Exhibit "3".)

17.    On March 29, 2017, Saylor responded to Tamlin's submission and indicated that replacement of the entire roof was excluded under the Averys' insurance contract, by exclusions effective November 8, 2016. (Joint Stipulation No. 11; *see* Correspondence, dated March 29, 2017, Joint Exhibit "4".)

18.    Thereafter, Erie retained Len Rudick ("Rudick"), of McClellan, Rudick & Affiliates, who inspected the Averys' residence on April 16, 2016.  On April 30, 2017, Rudick issued a report ("Rudick Report") in which he claimed not to have found any evidence of wind damage, but did find possible damage to one cap tile and three slope tiles. He further determined that the roof could be repaired by replacing the damaged tiles.  (Joint Stipulation No. 12; *see* Report, dated April 30, 2017, Joint Exhibit "5".)

19.    On May 23, 2017, Saylor responded to the Averys' resubmission, referencing both Rudick Report and the Insurance Policy, indicating that replacement of the entire roof was excluded under the "Exclusions" section of the Insurance Policy.  He did not specify, however, on which particular paragraph he was relying to deny the Averys' damage claim. (Joint Stipulation No. 13; *see* Report, dated May 23, 2017, Joint Exhibit "6".)

20.    Then, on May 16, 2017, Erie notified the Averys that, effective June 20, 2017, due to "poor conditions/maintenance of property regarding your failure to complete repairs paid for as a result of your 8/27/16 claim."  (K.Avery Aff. at ¶11.; *see* Notice of Cancellation, Plaintiffs' Exhibit "E".)

21.    The Ohio Residential Code is the controlling law governing repairs to the Averys' property.  (Joint Stipulation No. 14.)

### III. Summary Judgment Standard

Both plaintiffs and defendant have filed cross-Motions for Summary Judgment. A summary judgment is appropriate where there is no material issue of fact and the moving party is entitled to a judgment in his favor as a matter of law. RULE 56(c), FED. R. CIV. PROC.; Celatex Corp. v. Catlett, 477 U.S. 317, 322, 106 Sect. 2548, 91 L.Ed.2d 256 (1986).

The moving party bears the initial burden of proving the absence of any genuine issue of material fact as to each essential element of his claim or claims. *Id.* at 321; Talley v. Bravo Pitino Restaurant, 61 F.3d 1241, 1245 (6th Cir. 1995). If the moving party meets this burden, the non-moving party must "present some significant, probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." Sixty Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987); Harris v. Adams, 873 F.2d 929, 931 (6th Cir. 1989). Such evidence need not be dispositive of the ultimate issue, but only need be sufficient that when construed most strongly in favor of the non-moving party, "the evidence presents a sufficient disagreement to require submission to a jury." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992). Only where there exists no genuine issue of material fact and the moving party is entitled to a judgment in its favor as a matter of law may the trial court properly grant a motion for a summary judgment. RULE 56(c), FED. R. CIV. PROC.

As set forth below, the uncontested facts in evidence establish that Erie wrongfully, and without justification, denied the Averys' claim submitted under the Insurance Policy for replacement of their asbestos-cement tile roof. These facts, which are uncontested, mandate the entry of a summary judgment in their favor.

### IV. Law and Argument

Erie, In the course of dealings with the Averys regarding Claim No. 074-10740447170, has articulated two separate bases for denying that claim: First, as set forth in the Rudick Report and in the Answer filed in this action, Erie asserts that under the Ohio

Residential Code, it need only replace several damaged tiles to satisfy that claim. And second, in the correspondence from Saylor, dated March 29, 2017, and May 23, 2017, Erie asserts that the claim falls under one of various exceptions set forth in the Insurance Policy. Each of these arguments are addressed in turn.

A. *Under Relevant Provisions of the Ohio Residential Code, Erie Cannot Simply Replace the Individual, Damaged Roof Tiles, but Must Replace the Entire Roof.*

(1) Provisions of the Ohio Residential Code specifically governing cement-asbestos roofing prevail over provisions dealing with minor repairs in general.

The parties have stipulated that the roof on the Avery Residence is constructed with 12x24 inch Philip Carey Careystone Scotch American No. 20 asbestos-cement tiles. (Joint Stipulation No. 4.) The parties have also stipulated that this matter is governed by the Ohio Residential Code, O.A.C. §4101:8-9-01, *et seq.* (Joint Stipulation No. 14.)

The Averys, on the one hand, argue that the Ohio Residential Code directly references asbestos-cement tiles in Sec. 907.3, which reads:

> **907.3. Recovering versus replacement.**
>
> New roof coverings shall not be installed without first removing all existing layers of roof coverings where any of the following conditions exist: …
>    2. Where the existing covering is wood shake, slate, clay, cement or cement-asbestos tile …

O.A.C. 4101:8-9-01, Sec. 907.3. Ostensibly, then, the Averys cannot simply replace the damaged asbestos-cement tiles with matching asbestos-cement tiles, but must replace the entire roof with new material.

Erie, on the other hand, contends that because the Avery Residence was built before 2013, it is an "existing structure" for purposes Sec. 102.7 of the Ohio Residential Code, and that:

> **113.6. Replacement and Repairs to systems, components and materials.**
>
> Replacement of residential building components, and repairs to existing systems and materials or building components not otherwise provided for in this section, shall not be required to meet the provisions for new construction,

> provided such work is done in accordance with the conditions of the existing approval in the same manner and arrangement as was in the existing system …

O.A.C. 4101:8-9-01, Sec. 113.6. Erie further contends that such minor repairs may be undertaken without oversight by local building officials. O.A.C. 4101:8-9-01, Sec. 102.10.2. Erie would argue that no conflict exists between Secs. 113.6 and 907.3 of the Ohio Residential Code because the Avery Residence is an "existing structure". Because Sec. 907.3 specifically references "new roof coverings", under Sec. 113.6 it would not apply to the Avery Residence.

Erie's argument, however, ignores those regulations governing the administration of the Ohio Residential Code, and in particular that:

> **102.1. General.**
>
> Where, in any specific case, different sections of this code specify different materials, methods of construction or other requirements, the most restrictive shall govern. Where there is a conflict between a general requirement and a specific requirement, the specific requirement shall be applicable.

O.A.C. 4101:8-9-01, Sec. 102.1. Because Sec. 907.3 specifically applies to rooves with cement-asbestos roofing, while Sec. 113.6 does not reference any roofing material, the former prevails under Sec. 102.1, despite the fact that the Avery Residence is an existing structure under the Ohio Residential Code.

(2) <u>Erie cannot repair the damage to the roof of the Avery Residence by replacing the damaged roof tiles with matching tiles</u>.

Even assuming, *arguendo*, that Sec. 113.6 of the Ohio Residential Code does govern the repairs to the Avery Residence, Erie still could not simply replace the damaged cement-asbestos roof tiles with matching tiles. Under the *provisio* to Sec. 113.6, repairs to an existing structure must be performed "in the same manner and arrangement as was in the existing system …" O.A.C. 4101:8-9-01, Sec. 113.6. This accords with regulations issued by the Ohio Department of Insurance that, where a loss requires the replacement of an item, the insurer must match the "quality, color and size" of that item. O.A.C. 3901-1-

54(I)(1)(b).  The repairs contemplate by Erie cannot meet these conditions.

First, the Avery Residence must be repaired with Careystone Scotch American No. 20 asbestos-cement tiles, or with matching tiles.  Under the Ohio Residential Code, Erie could not use reclaimed tiles to match those on the Avery Residence:

> **907.5.  Reinstallation of materials.**
>
> Existing slate, clay or cement tile shall be permitted for reinstallation, except that damaged, cracked or broken slate or tile shall not be reinstalled. Existing vent flashing, metal edgings, drain outlets, collars and metal counterflashings shall not be reinstalled where rusted, damaged or deteriorated.  Aggregate surface materials shall not be reinstalled.

O.A.C. 4101:8-9-01, Sec. 907.5.   This section does not specifically include cement-asbestos tiles, and applying the rule of statutory construction, *expressio unius est exclusio alterius*, thereby prohibits the reinstallation of cement-asbestos roof tiles.  Consequently, if Erie were to replace the individual, damaged tiles on the Avery Residence, it cannot use reclaimed Careystone Scotch American No. 20 tiles, only  new roof tiles.  Philip Carey has not manufactured any new product since 1989.  (Joint Stipulation No. 4.)  Moreover, no known dealer carries tiles matching those specifications.  (O'Brien Aff. at ¶¶6-8.)

Second, even if matching roof tiles could be found, they must be installed "in the same manner and arrangement as was in the existing system …"   This would involve drilling holes through those roof tiles to install fasteners.  Such work could not be done without causing damaging to the overlapping tiles existing in place.  (O'Brien Aff. at ¶4.)  An alternative method sometimes suggested, of applying small metal brackets to the lower edge of he roof tile would not be "in the same manner", as required under the *provisio* to Sec. 113.6, and would make that tile more susceptible to wind damage.  (O'Brien Aff. at ¶5.)  Hence, the replacement cement-asbestos roof tiles could not be installed in the same manner and arrangement as the existing tiles on the Avery Residence.

In short, Erie cannot rely on Sec. 113.6 to exempt it form the effect of Sec. 907.3, that the Avery's existing cement-asbestos roof must be replace rather than repaired because under Sec. 102.1, the more specific Sec. 907.3 controls over the more general Sec. 113.6; and because the unavailability of new Philip Carey roof tiles makes it

impossible for Erie to comply with the *provisio* in Sec. 113.6 that such tiles be installed "in the same manner and arrangement as was in the existing system …"   The bottom line is that, in order to comply with Sec. 907.3, Erie must replace the entire roof on the Avery Residence.

B.	Under Relevant Provisions of the Insurance Policy, Erie must Pay the Averys up to $20,000.00 for the Installation of a New Roof.

Erie has also claims, through its agent, Saylor, that the Avery's claim is not covered under the Insurance Policy.  More specifically, in both his correspondence dated March 29, 2017, and in that dated May 23, 2017, Saylor state that

> … [W]e have determined that coverage does not exist for replacement of the entire roof system pursuant to the terms. Limitations and conditions under [the Insurance Policy]
>
> Specifically, please refer to the following provisions in your policy:
>
> EXCLUSIONS — What We Do Not Cover — Dwelling And Other Structures Coverages
>
> "We" do not pay for loss resulting directly or indirectly from any of the following, even if  other events or happenings contributed concurrently, or in sequence, to the loss …
> 5.	caused by … b. mechanical breakdown, deterioration, wear and tear, marring, inherent vice, latent defect, tree roots, rust or smog;
> 20.	by weather conditions if any peril excluded by this policy contributed to the loss in any way.
> 21.	caused by, resulting from, contribute to or aggravated by faulty or inadequate:
> a. planning, zoning, development;
> b. design, development of specification, workmanship, construction;
> c.  materials used in construction; or
> d. maintenance
> of or related to property whether on or off the "residence premises" by any person, group, organization group or governmental body.
> 22.	of color mismatch because of weathering, fading, oxidizing, or wear and tear between the existing undamaged roof and/or siding on the welling and/or structure and new materials used to repair or replace the damaged roof and/or siding on the dwelling or structure.

>23.	by the existing undamaged roof and/or siding on the welling and/or structure and/or new mismatch because materials are unavailable, obsolete, or discontinued between the existing undamaged roof and/or siding on the dwelling and/or structure and new material used to repair or replace the damaged roof and/or siding on the dwelling and/or structure.
>24.	by "fungi" wet or dry rot or bacteria, meaning the presence, growth, proliferation, spread or any activity of "fungi" wet or dry rot, or bacteria other than as provided under ADDITIONAL PAYMENTS, Fungi Wet or Dry Rot Or Bacteria Coverage.

(See Correspondence, dated March 29, 2017; Joint Exhibit "4"; Correspondence, dated May 23, 2017; Joint Exhibit "6" [citing Insurance Policy at 5-7, Joint Exhibit "1"].)

Yet neither correspondence identifies which of this myriad of exceptions applies to the Avery's case, nor offers any evidence whatsoever to support exclusion under any of the identified exceptions.  Saylor, in denying the Averys' claim, has simply recited six paragraphs from the Insurance Policy and asserted, without more, those paragraphs justify his actions.  There is simply no evidence I this correspondence, or in the grater evidentiary record, justifying the denial of the Averys' claim.

Moreover, Saylor, and through him Erie, has completely ignored portions of the Insurance Policy directly applicable to the Averys' claim.: the ordinance upgrade provision:

> Ordinance Or Law Coverage
>
> If a loss by a PERIL WE INSURE AGAINS occurs to covered property, or the building containing the covered property, "we" will pay for the increased costs incurred due to the enforcement of any ordinance or law that is in force at the time of the loss up to an additional $20,000.
>
> "You" may use this coverage for:
>
> 1. the construction, demolition, renovation or repair of the portion of the building damaged by a PERIL WE INSURE AGAINST;
>
> \*	\*	\*	\*
>
> 3. the removal or replacement of the undamaged portion of the building because the repair or replacement of the portion of the building damaged by a PERIL WE INSURE AGAINST;

(Insurance Policy at 11; Joint Exhibit "1".)

Here, Erie has approved the Avery's original claim to replace the roof tiles and fencing damages during the August 27, 2016 storm. Erie calculated the cost of such repairs to be $2,696.50 (less the $500.00 deductible), or $2,196.50. (Joint Stipulation Nos. 7 and 8; *see* Correspondence, dated November 22, 2016, Plaintiffs' Exhibit "B".) As set forth above, Erie cannot undertake the simple repairs it had contemplated because the Ohio Residence Code prohibits the use of reclaimed cement-asbestos tiles; and because the tiles cannot be installed in a manner consistent with the construction of the undamaged portion of the roof. This is the very situation contemplated by the "Ordinance or Law Coverage" provision of the Insurance Policy.

C. *Erie is Liable to the Averys for Breaching the Insurance Policy, Breaching the Covenant of Good Faith and Fair Dealing; and for Acting in Bad Faith.*

The Averys and Tamlin have raised three separate claims in their Complaint: (*i*) breach of contract, based upon Erie's failure to allow the Averys' claim submitted under the Insurance Policy [Count One]; (*ii*) breach of Erie's common law duty to act fairly and in good faith towards the Averys [Count Two]; and that Erie acting in bad faith, in that the basis for its denial of the Averys' claim was not predicated upon circum-stances that furnished reasonable justification for that denial [Count Three]. (*See* Complaint (doc. 1). at ¶¶17-29.)

Initially, Erie has breached its contract, *i.e.* the Insurance Policy, by refusing to honor the Avery's claim for, not only the repair of the damage to their roof from the August 27, 2016, storm, but also for the removal of the existing cement-asbestos roof on their residence. While Erie found the former to be covered (*see* Correspondence, dated November 22, 2016, Plaintiffs' Exhibit "B"), it denied the latter, even though that claim is clearly covered by the "Ordinance or Law Coverage" provision of the Insurance Policy. (*See* Insurance Policy at 11, Joint Exhibit "1").

Further, under Ohio law, "there is an implied duty of good faith and fair dealing in every contract." Indemnity Co. v. Nicole Gas Production, Ltd. (10th Dist. 2008), 2008-Ohio-5056, ¶13. Good faith is "a compact reference to an implies undertaking not to take

opportunistic advantage in a way that could not have been contemplated at the time of drafting …" E. Schory & Sons, Inc. v. Society Nat'l Bank (1996), 75 Ohio St.3d 433, 443-44, 662 N.E.2d 1074. Here, Erie violated that duty denying the Averys' claim by misrepresenting that the damaged roof tiles simply could be replaced, as set forth in the November 22, 2016 correspondence and in the Rudick Report, when in fact the Ohio Residential Code specifically precludes such repairs unless performed with new, matching cement-asbestos tile installed in the same manner as the undamaged portion of the roof, which in the Avery's circumstance, would be impossible.

But more importantly, in the specific context of an insurance contract, Ohio law imposes upon an insurer a duty to act in good faith in the handling and payment of the claims of its insured. Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, *syllabus* ¶1, 452 N.E.2d 1315. A insurer's breach of this duty gives rise to a cause of action in tort, irrespective of any liablity that might arise from a breach of the underlying insurance contract. Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298, *syllabus* ¶1, 525 N.E.2d 783. An insurer breaches its duty of good faith in attending to a claim when its failure to perform under the contract "is not predicated upon circumstances that furnish a reasonable justification therefore." Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, *syllabus* ¶1, 644 N.E.2d 397.

As set forth more completely above, Erie has breached its duty of good faith in dealing with the Averys by failing to provide a reasonable justification for the denial of their renewed claim calling for the replacement of the existing roof of their residence. Erie has asserted, through the Rudick Report, that the provisons of the Ohio Residential Code dealing with cement-asbestos roofing does not apply under the "minor repair" provisions of Secs. 202, or to the "existing structure" provisions of Sec. 113.6, when if fact, under the Sec. 102.1, the provisions of Secs. 907. 3 and 907.5, which deal specifically with cement-asbestos roofing, control. Furthermore, Erie, acting though Saylor, has denied the Averys renewed claim under certain exceptions to coverage in the Insurance Policy, it has not offered any explanation or evidence as to just how those exceptions apply to the Avery Residence.

Rather, the removal of the existing roof to bring the Avery Residence, which would comply with Sec. 907.3 of the Ohio Residential Code, are circumstances foreseen under the "Ordinance or Law Coverage" provision of the Insurance Policy.  Erie has never explained just why it did not recognize the Averys' claim under this provision.  In short, Erie's denial of the Averys; claim is not predicated upon circumstances that provide a reasonable justification for denying claim.

Erie has previously recognized the Averys' claim for repairs to the roofing and fencing of their residence in the amount of $2,196.50.  (Joint Stipulation No. 7).  They should be owed an additional amount, up to $20,000.00, under the "Ordinance or Law Coverage" under their policy to cover the cost of removing the existing roof and installing a ne roof.  (Insurance Policy at 11, Joint Exhibit "1".)  The Averys therefore claim compensatory damages totaling $22, 196.50.

Finally, "inasmuch as the breach of the duty to act in good faith is tortious in nature, punitive damages may be recovered against an insurer who breaches his duty of good faith in refusing a claim to pay upon adequate proof."  Hoskins v. Aetna Life Ins. Co., *supra*, 6 Ohio St. 3d at 377, 452 N.E.2d at 1315.  Accordingly, the Averys are entitle to an evidentiary hearing to determine whether punitive damages are appropriate.

## V. Conclusion

*WHEREFORE*, for all the reasons set forth above, plaintiffs Tracy & Kelly Avery and Tamlin Exteriors, LLC, demand a judgment in their favor and against defendant Erie Insurance Co., in the amount of $22,196.50.  They further requests that this court enter an Order to that effect, and schedule a date for an evidentiary hearing on the issue of punitive damages.

    Respectfully submitted,

    /s/  John H. Forg_____
    **John H. Forg  (0041972)**
    Law Office of John H. Forg
    P.O. Box 72
    West Chester, Ohio  45071-0072
    (513) 379-5205

    Attorney for Plaintiffs
    Tracy & Kelly Avery, *et al.*

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion for Summary Judgment was served upon Gordon D. Arnold, Freund, Freeze & Arnold, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, OH  45402-2017, by electronic U.S. Mail, on this 28th day of February, 2028.

    /s/  John H. Forg_____
    **John H. Forg  (0041972)**

    Attorney for Plaintiffs
    Tracy & Kelly Avery, *et al.*