IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TRACY AVERY, *et al.*, | : | Case No. 1:17-cv-562 |
| Plaintiffs, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| ERIE INSURANCE COMPANY, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 14) and Plaintiffs' Motion for Summary Judgment (Doc. 15). Appropriate responses and replies have been filed (Docs. 16, 17, 18, 20). For the reasons that follow, the Defendant's Motion is **GRANTED IN PART AND DENIED IN PART,** and the Plaintiffs' Motion is **DENIED**.

I. BACKGROUND

A. Facts

The Averys live in a two story, single family home in Hamilton, Ohio. (Jt. Stips., Doc. 13, at ¶ 1.) They purchased homeowners' insurance from Erie Insurance Company ("Erie") effective from November 8, 2014 through November 8, 2017. (*Id.* at ¶ 3). On August 27, 2016, a storm damaged part of the Averys' roof and fence. (*Id.* at ¶ 5.) Erie's insurance adjustor inspected the roof and identified five damaged roof tiles. (*Id.* at ¶ 6.) Erie offered to pay the Averys $2,196.50—the amount Erie determined it would cost to replace the damaged roofing tiles and some fencing. (*Id.* at ¶¶ 7–8.)

The Averys contacted Tamlin Exteriors ("Tamlin"). (*Id.* at ¶ 10.) Tamlin determined that the Averys' roof tiles contained asbestos, and, therefore, the whole roof should be removed

1

and replaced along with some fencing repairs at a total cost of $62,698.96. (*Id.* at ¶¶ 9–10.) The Averys submitted Tamlin's estimate to Erie, and Erie retained Len Rudick to re-inspect the roof. (*Id.* at ¶¶ 11–12.) Rudick noted that the cement-asbestos roof tiles were weathered and stained with algae or moss and, also, three areas had been patched with cement-asbestos tiles different from those covering the rest of the roof. (Jt. Ex. 5, Doc. 13-5 at PageID 98–99.) While he denied that there was wind or hail damage to the roof, Rudick found tree-limb damage to one cap tile and three slope tiles that he believed could be repaired by replacing the damaged tiles. (*Id.* at PageID 99.)

After receiving Rudick's report, Erie denied the Averys' claim to replace the entire roof, but again offered to pay $2,196.50 for repairs. (Jt. Ex. 6, Doc. 13-6 at PageID 112–13.) In refusing to pay for roof replacement, Erie indicated that loss resulting from "wear and tear," "faulty or inadequate . . . workmanship; construction . . . [or] maintenance," and "wet or dry rot" is specifically excluded from the Averys' insurance policy. (*Id.* at PageID 113.) Erie ultimately cancelled the Averys' insurance policy effective June 20, 2017, due to "poor conditions/ maintenance of property regarding your failure to complete repairs paid for as a result of your 8/27/16 claim." (K. Avery Aff., Doc. 15-1 at PageID 198, ¶ 11.)

## B. Procedural Posture

The Averys initiated this action alleging three causes of action: breach of the insurance contract by failing to replace the entire roof; breach of the common law duty to act fairly and in good faith; and bad faith refusal of their claim under the insurance contract. The parties agree on the relevant facts in this case. The parties further agree that the Ohio Residential Code (codified at Ohio Administrative Code Chapter 4101:8) governs repairs to the Averys' property. (Jt. Stips., Doc. 13 at PageID 44, ¶ 14.) The issue is how the Ohio Residential Code applies here.

The Averys contend that because the asbestos-cement roof tiles used on their roof are no longer manufactured, Erie is unable to match the quality, color or size of their existing roof tiles as required by the Ohio Administrative Code. According to the Averys, then, Erie must replace as many of the roof tiles as necessary to result in a reasonably comparable appearance, and—because the roof tiles are cement-asbestos—Ohio Administrative Code 4101:8-9-01 requires that Erie remove all old roofing. Thus, they claim, Erie must completely replace the Averys' roof in order to comply with Ohio law and the insurance contract.

Not surprisingly, Erie disagrees. According to Erie, the replacement tiles need only be similar in appearance and quality to those already on the roof—not the exact matching cement-asbestos tiles previously used. Also, Erie avers, Ohio Administrative Code 4101:8-9-01 (regarding cement-asbestos roofs) applies only to new construction and entire roof replacement not to the "minor repairs" required to the Averys' roof. Finally, Erie contends that the exclusions in the insurance contract bar the Averys' claim here. Both the Averys and Erie have moved for summary judgment (Docs. 14 and 15).

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,

322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting Scott). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson*, 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

**III. ANALYSIS**

**A. Ohio Law Does Not Mandate a New Roof**

### a. "Minor Repairs" Within the Meaning of Ohio Administrative Code 4101:8-1-01, § 102.10.2

Erie contends that the Ohio Residential Code allows for minor repairs to the Averys' roof rather than replacing the entire roof. The Court agrees.

The Ohio Residential Code applies to "the construction, alteration, movement, enlargement, replacement, repair, equipment, use and occupancy, location, maintenance, removal and demolition" of all single, double, or triple family dwellings and related structures. Ohio Admin. Code ("O.A.C.") 4101:8-1-01, § 101.2. However, the legislature indicated its intentions regarding structures already in existence when the Ohio Residential Code was adopted in 2013. Specifically, the Code provides:

> 102.7 **Existing structures.** The provisions of section 113 shall control the alteration, repair, addition, maintenance, and change of occupancy of an existing structure.
> The occupancy of any structure currently existing on the date of adoption of this code shall be permitted to continue without change provided there are no orders of the residential building official pending, no evidence of fraud, or no serious safety or sanitation hazard.

O.A.C. 4101:8-1-01, § 102.7 (emphasis in original). Looking to § 113, then, the Code further provides:

> 113.6 **Replacement and repairs to systems, components and materials.** Replacement of residential building components, and repairs to existing systems and materials or building components not otherwise provided for in this section, **shall not be required to meet the provisions for new construction, provided such work is done in accordance with the conditions of the existing approval in the same manner and arrangement as was in the existing system**, is not less safe than when originally installed and is approved.

*Id.*, § 113.6 (emphasis added). The Code defines "Repair, Minor" as, "The reconstruction or renewal of any part of an existing building for the purpose of its maintenance when the work has

5

limited impact on access, safety or health." O.A.C. 4101:8-2, § 202.  While the Code enumerates a number of actions that do not constitute "minor repairs," none of those items are relevant here.  *See id.*  Section 102.10.2 allows minor repairs to be completed without application or approval by a residential building official.  O.A.C. 4101:8-1-01, § 102.10.2.

In the case at bar, the parties stipulate that the Averys' residence is an "existing structure" because it was built prior to 2013.  (Jt. Stips., Doc. 13 at PageID 42, ¶ 1.)  Therefore, according to § 113.6, the roof repairs need not meet the standards for new construction as long as the work is done "in the same manner and arrangement as was in the existing system" and is not less safe.  O.A.C. 4101:8-1-01, § 113.6.  Similarly, insurers must "match the quality, color or size of the item suffering the loss" or replace as much of it "as to result in a reasonably comparable appearance.  O.A.C. 3901-1-54(I)(1)(b).  The issue, then, is whether Erie can replace the Averys' roof tiles "in the same manner and arrangement" as the existing roof and "match the quality, color or size" of the roof tiles "as to result in a reasonably comparable appearance," as required by Ohio Administrative Code 4104:8-1-01, § 113 and O.A.C. 3901-1-54(I)(1)(b).

While this issue has not been addressed directly, two other courts have declined to extend Ohio Administrative Code 3901-1-54(I)(1)(b) to require replacement rather than repair when new materials would not match the existing materials.  *See Wright v. State Farm Fire and Cas. Co.*, 555 F. App'x. 575 (6th Cir. 2014) and *Zinser v. Auto-Owners Ins. Co.*, 2017-Ohio-5668, 2017 WL 2838393 (Ohio App. 2017).  In *Wright*, the plaintiffs' wood shake roof suffered minor storm damage, and the parties agreed that new wood shakes would not match the color of the existing weathered wood shakes until eventual exposure to the elements weathered the new shakes as well.  Even though the Wrights' homeowners' association required that the roof be consistent in color, the Sixth Circuit declined to extend § 3901-1-54(I)(1)(b)'s "reasonably

comparable appearance" language to require roof replacement "'in the absence of evidence of special circumstances regarding their particular roof,' considering that to hold otherwise would . . . create an extreme blanket rule requiring the entire replacement of any damaged shake roof." *Wright*, 555 F. App'x. at 579. An Ohio appellate court—citing *Wright*—reached a similar result concerning storm-damaged siding. *Zinser*, 2017 WL 2838393 at *6.

The case at bar raises a closer question because—unlike the wood shakes in *Wright* and the siding in *Zinser*—the new tiles used for the repair here will never age to an exact or nearly exact match. While the Averys' restoration expert, Rob O'Brien, located tiles similar to the Greystone Scotch American No. 20 tiles on the Averys' original roof, the similar tiles lacked tabs and would need to be installed in a manner that may make them more susceptible to wind damage. (O'Brien Aff., Doc. 15-2, at PageID 201.)

However, O.A.C. 3901-1-54(I)(1)(b) does not require the new materials to be identical. It requires only restoring a "reasonably comparable appearance" to "the item suffering loss." *Id.* Similarly, § 113.6 requires only that repairs be made "in the same manner and arrangement as was in the existing system [and] is not less safe than when originally installed." O.A.C. 4101:8-1-01, § 113.6. Here, the Averys' roof—at the time it suffered the alleged storm damage—had already been repaired with non-matching, untabbed tiles in several places. (Rudick Affidavit, Doc. 14-2, Exhibit B-1 at PageID 168 and 173–177.) Therefore, repairing the storm damaged tiles at issue here with similar, non-matching, untabbed tiles will, indeed, be reasonably comparable in appearance and consistent in manner and arrangement as the existing roof as long as it is not less safe than the original roof when installed. Neither party has alleged or introduced evidence that the repaired roof would be less safe than the original roof. Accordingly,

7

appropriate repairs with similar tiles would satisfy the requirements of Ohio Administrative Code 4101:8-1-01, § 113.6 and 3901-1-54(I)(1)(b).

### b. Ohio Administrative Code 4101:8-9-01, § 907.3

The Averys contend that Ohio Residential Code § 907.3 requires installation of a new roof in this case. Ohio Residential Code § 907.3 provides:

> **907.3 Recovering versus replacement.** New roof coverings shall not be installed without first removing all existing layers of roof coverings where any of the following conditions exist:
> * * *
> 2. Where the existing roof covering is wood shake, slate, clay, cement or asbestos-cement tile.

O.A.C. 4101:8-9-01, § 907.3. However, § 907.3—by its language—applies only to the way in which "new roof coverings" are installed. It does not require installation of a new roof covering where—as here—Ohio Administrative Code 4101:8-1-01 permits minor repairs to an existing roof.

According to the Averys, though, § 907.3 is in conflict with § 113.6 and, therefore, § 102.1[1] gives precedence to the section that deals specifically with cement-asbestos roof tiles, i.e., § 907.3. However, § 907.3 and § 113.6 do not conflict.

Section 907.3 applies to the manner in which a new roof is installed. In contrast, § 113.6 applies specifically to "[r]epairs to existing systems." O.A.C. 4101:8-1-01, § 113.6. There is no conflict between the two sections. By their plain language, § 113.6 applies to repairs made to roofs in existence when the Code was adopted, and § 907.3 requires roofers installing a new roof

---

[1] Section 102.1 provides, "**General.** Where, in any specific case, different sections of this code specify different materials, methods of construction or other requirements, the most restrictive shall govern. Where there is a conflict between a general requirement and a specific requirement, the specific requirement shall be applicable." O.A.C. 4101:8-1-01, § 102.1.

or total roof replacement to first remove the existing roof covering (as opposed to placing the new roof on top of the existing roofing) before installing the new roof, if the current roof is wood shake, slate, clay, cement or asbestos-cement.[2]

It is worth noting that the damaged roof at issue in *Wright* was wood shake, but the Court did not apply § 907.3 to determine whether the Wrights were entitled to a new roof rather than a repair. *See Wright*, 555 F. App'x. at 578–79. Because there is no conflict between these sections, the Court need not consider § 907.3 in its current analysis. *See* O.A.C. 4101:8-1, § 102.1.

### c. The Erie Insurance Policy

Having concluded that the Ohio Residential Code permits repair rather than replacement of the Averys' roof, the Court must now examine the insurance contract policy language.[3] Erie contends that the insurance policy specifically excludes coverage for the Averys' claim. (Doc. 14 at PageID 120–122.)

The insurance policy provides:

> EXCLUSIONS—What We Do Not Cover—Dwelling And Other Structures Coverages
> **"We"** do not pay for loss resulting directly or indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence, to the loss:
> \* \* \*
> 5. caused by:

---

[2] Section 907.3 also applies if the current roof is not adequate as a base for additional roofing, if the roof already has two or more layers of roofing, or if an asphalt roof is in a high hail exposure area. O.A.C. 4101:8-9-01, § 907.3(1), (3) and (4). These conditions clearly apply to whether a roofer is permitted to simply install a new roof on top of an old roof. They are not in conflict with § 113.6.

[3] The Averys contend that the "Ordinance or Law Coverage" policy language requires Erie to pay them $20,000 toward a new roof because Ohio law requires roof replacement. (Doc. 15 at PageID 191–193.) As explained above, the Court concludes that Ohio law does not require roof replacement here so the "Ordinance or Law Coverage" policy language does not apply.

> \* \* \*
> b. mechanical breakdown, deterioration, wear and tear . . .
> \* \* \*
> 20. by weather conditions if any peril excluded by this policy contributes to the loss in any way.
> 21. caused by, resulting from, contributed to or aggravated by faulty or inadequate:
> a. planning, zoning, development;
> b. design, development of specifications, workmanship; construction,
> c. materials used in construction; or
> d. maintenance
> of or related to property whether on or off the **"residence premises"** by any person, group, organization or governmental body.
> \* \* \*
> 24. by **"fungi,"** wet or dry rot or bacteria, meaning the presence, growth, proliferation, spread or any activity of **"fungi,"** wet or dry rot, or bacteria other than as provided under ADDITIONAL PAYMENTS, Fungi, Wet Or Dry Rot Or Bacteria Coverage.

(ERIE Policy Number Q59-5802648, Jt. Ex. 1, Doc. 13-1 at PageID 53–55.)

Erie alleges that it is entitled to summary judgment because the Averys' roof damage was caused or exacerbated by deterioration, wear and tear, faulty or inadequate construction or maintenance, or wet or dry rot. (Doc. 14 at PageID 120–122.) However, Erie's own expert, Len Rudick, noted only that the roof tiles were weathered and stained with algae and heavy moss growth. He made no finding that the damage he observed (which he attributed to "tree limb impact") was caused or exacerbated by any of the listed exclusions. (Rudick Aff., Doc. 14-2, Exhibit B-1 at PageID 168 and 169.) In addition, Ms. Avery indicated that the August 27, 2016 storm caused wind and damage to her roof and caused tree limbs to fall on her roof and fence. (K. Avery Aff., Doc. 15-1 at PageID 197, ¶ 4.) Thus, the record, as it currently stands, contains no evidence that anything other than wind and falling tree limbs during the storm damaged the Averys' roof and fence. Accordingly, the policy language does not exclude the Averys' claim

from coverage. Erie's Motion for Summary Judgment is denied to the extent that Erie claims the roof repair is excluded by the policy language.

B. **The Averys' Claims for Breach of the Covenant of Good Faith and Fair Dealing and for Acting in Bad Faith**

In addition to the breach of contract claim,[4] the Averys allege that Erie's failure to provide at least $20,000 toward a new roof breached Erie's implied duty of good faith and fair dealing and constituted the tort of acting in bad faith. (Doc. 1.) "When parties enter into contracts, they are bound to each other by 'standards of good faith and fair-dealing.'" *Laurent v. Flood Data Serv., Inc.*, 146 Ohio App.3d 392, 399, 766 N.E.2d 221 (2001) (quoting *Bolling v. Clevepak Corp.*, 20 Ohio App.3d 113, 121, 484 N.E.2d 1367 (1984)). In addition, because insurers enjoy a special responsibility toward insureds, "An insurer has a duty to its insured to act in good faith in the handling and payment of an insured's claims . . . [and] reach conclusions as a result of 'the weighing of probabilities in a fair and honest way.'" *Dorsey v. Campbell Hauling*, 2003-Ohio-3341, 2003 WL 21469132 at *4, ¶ 19 (Ohio App. 2003) (quoting *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St. 3d 690, 590 N.E.2d 1228 (1992), *overruled on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994)). However, the insurer, "is entitled to refuse a claim where the claim is 'fairly debatable' and the insurer's refusal is based on a genuine dispute over either the facts giving rise to the claim or the status of the law at

---

[4] The parties stipulate that Erie paid the Averys $2,196.50 (the cost of the $2,696.50 roof and fence repair minus the $500 deductible). (Jt. Stips., Doc. 13 at PageID 43, ¶¶ 7–8.) The Averys' breach of contract claim rests on the Averys' claim that they are entitled to a new roof or at least $20,000 toward a new roof rather than the simple cost of repair. Because the Court determined above that the Averys are entitled only to the cost of repair, Erie is entitled to Summary Judgment on the Averys' breach of contract claim. However, to the extent that the Averys are no longer able to cash the $2,196.50 check Erie provided them, Erie must issue repayment in that amount.

11

the time the claim was denied." *Id.* (quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 630, 605 N.E.2d 936 (1992)).

As explained above, the Averys' claim was "fairly debatable" as to status of the law and whether the facts in this case require a replacement roof or simply a repair. In addition, there is no evidence that Erie breached its duty of good faith and fair dealing here. The Averys and Erie merely disagree concerning the application of relevant law to the facts at hand. Accordingly, Erie's Motion for Summary Judgment must be granted on these claims.

## IV. CONCLUSION

For the foregoing reasons, Erie's Motion for Summary Judgment (Doc. 14) is **GRANTED IN PART AND DENIED IN PART**. The Averys' Motion for Summary Judgment (Doc. 15) is **DENIED**.

**IT IS SO ORDERED**.

Dated: May 4, 2018    S/Susan J. Dlott_____
               Judge Susan J. Dlott
               United States District Court